1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

MICHAEL M.,[1]

         Plaintiff,

   v.

ANDREW SAUL,

         Defendant.

Case No.  20-cv-05666-RMI

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 21, 28

Plaintiff, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for benefits under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 9 & 10), and both parties have moved for summary judgment (dkts. 21 & 28). For the reasons stated below, Plaintiff's motion for summary judgment is granted, Defendant's motion is denied, and the case is remanded for further proceedings.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

United States District Court
Northern District of California

1   "substantial evidence" appears throughout administrative law and directs courts in their review of

2   factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

3   Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

4   adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

5   197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In

6   determining whether the Commissioner's findings are supported by substantial evidence," a

7   district court must review the administrative record as a whole, considering "both the evidence

8   that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v.*

9   *Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where

10  evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676,

11  679 (9th Cir. 2005).

12  **PROCEDURAL HISTORY**

13          On September 13 and 14, 2017, Plaintiff filed applications for Title II and Title XVI

14  benefits, alleging an onset date of August 10, 2014, as to both applications. *See* Administrative

15  Record "*AR*" at 15.[2] As set forth in detail below, the ALJ found Plaintiff not disabled and denied

16  the applications on July 2, 2019. *Id*. at 15-23. The Appeals Council denied Plaintiff's request for

17  review on June 22, 2020. *See id*. at 1-4. Thereafter, on August 13, 2020, Plaintiff sought review in

18  this court (dkt. 1) and argued *inter alia*: that the ALJ erred at Step Two and beyond in evaluating

19  Plaintiff's history of Achilles tendon rupture. *See* Pl.'s Mot. (dkt. 21) at 24-25. Defendant

20  contends that no such errors were committed, and that each of the ALJ's findings rest on a

21  foundation of substantial evidence. *See* Def.'s Mot. (dkt. 28) at 19-20.

22  **SUMMARY OF THE RELEVANT EVIDENCE**

23          Given that the court finds error in the ALJ's Step Two determination that Plaintiff's

24  Achilles tendon injury is non-severe (as well as the ALJ's failure to even mention, let alone

25  discuss, Plaintiff's arthritis and other arthropathies[3] of the lower leg at multiple sites) the

26

27  [2] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #18. *See* (dkts. 18-1 through 18-9).

28  [3] "Arthropathy is a joint disease, of which arthritis is a type. Arthropathies can be associated with a

United States District Court
Northern District of California

1   following is a recitation of the relevant evidence.

2          By way of background, Plaintiff, who is now 55 years old, was born in Georgia and raised

3   in Maryland. *See* AR at 479. In the late 1990s, Plaintiff suffered an injury while he was kicking a

4   plate glass window. *Id*. This caused him to completely sever his Achilles tendon and to lose such

5   significant amounts of blood that he lost consciousness at the scene, only to awaken two days later

6   in the hospital. *Id*. Since then, and despite the surgical repair of the affected tendon, Plaintiff has

7   steadily complained of chronic pain in his leg, in his back, and in his hip. *Id*. For example, during

8   the course of a consultative psychological examination in late November of 2017, Sokley Khoi,

9   Ph.D., observed (*inter alia*) that Plaintiff "walked slowly with a limp and in a slouched posture."

10  *Id*. 480.

11         At the hearing before the ALJ on May 17, 2019, Plaintiff responded to a question about

12  whether or not he is unable to do anything that he used to enjoy; he responded, "I can't really go -

13  - walk around too much anymore. It hurts too much." *Id*. 51. When asked how far he can walk

14  before it becomes too painful, Plaintiff stated, "[l]ike four or five blocks if I'm lucky . . . my leg's

15  permanently messed up. They said I'm missing - - missing 5% of my ankle motion is what they

16  say, which is apparently a lot." *Id*.  This was the extent of the development of the testimonial

17  record pertaining to the chronic leg, hip, and back pains that Plaintiff experiences – neither his

18  counsel nor the ALJ ventured to elicit any additional information (relevant to these conditions) at

19  the hearing. *See id*. at 30-61.

20         Plaintiff's various medical records (spanning from early 2014 to late 2018) contain

21  numerous indications of chronic pain and inflammation (which is evident from his medicinal

22  regimen which consistently included prescription strength anti-inflammatory medications such as

23  Naprosyn), as well as his arthritis, and his other arthropathies at multiple locations. *See generally*

24  *id*. at 409-10, 479-80, 502-49. Specifically, on March 26, 2014, Plaintiff's treatment providers

25  diagnosed him with "arthropathy not otherwise specified of the lower leg." *Id*. 548-49. The

26  _____

27  hematologic (blood) disorder or an infection, such as Lyme disease." *See* "What is Arthropathy?" Available
    on the website of the Johns Hopkins School of Medicine:
28  https://www.hopkinsmedicine.org/health/conditions-and-diseases/arthropathy

1    following month, on April 23, 2014, his doctors added an arthritis diagnosis to the pre-existing

2    diagnosis of unspecified arthropathy of the lower leg. *See id*. at 546-47. Thereafter, doctors

3    maintained their diagnoses of both of these rheumatic conditions as active and chronic problems

4    for at least the next two years (between 2014 and 2016). *See id*. at 502-42. In September of 2015,

5    Plaintiff's doctors noted the worsening of his musculoskeletal pain – specifically, his treatment

6    providers observed that he was experiencing increased leg pain and that his "[r]ight posterior calf

7    area [manifested] tenderness on palpation." *Id*. at 520-21. The following month, in October of

8    2015, doctors noted that Plaintiff's arthropathies had spread to "multiple sites." *Id*. at 518-19.

9    Months later, in May of 2016, his doctors noted that his arthropathies still affected "multiple

10   sites," despite having prescribed him high doses of Ibuprofen (800 mg tablets) and Naprosyn (375

11   mg tablets) for nearly two years. *See id*. at 510-11. However, the medicinal intervention failed to

12   abate these symptoms as his doctors noted – as late as August of 2016 – that Plaintiff continued to

13   suffer from "chronic pain in his right ankle." *Id*. 502-03.

14          On April 29, 2017, while incarcerated at the Alameda County Jail, Plaintiff was evaluated

15   by one clinician who observed that he still experienced ankle pain near the site of his old Achilles

16   tendon injury, and it was noted that he reported his pain severity as a 6 on a severity scale of 1 to

17   10. *See id*. at 409. The following day, another clinician noted that Plaintiff's pain was: (1) not

18   limited to his right leg; and (2) that it was objectively evident. *Id*. at 140. On this occasion, it was

19   observed that "[p]atient is noted to be leaning forward in the chair and 'rocking' at times due to his

20   chronic back / left leg pain." *Id*. Lastly, the following year, on February 5, 2018, during a one-time

21   consultative examination by Farah M. Rana, M.D. – Dr. Rana noted that Plaintiff "presents with

22   residual pain in his right leg." *Id*. at 497-99. Lastly, Plaintiff's function report from October of

23   2017 indicates that his "leg pain has worsened, making standing and walking hard to do." *Id*. at

24   253, 258.

25          **THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

26          A person filing a claim for social security disability benefits ("the claimant") must show

27   that he has the "inability to do any substantial gainful activity by reason of any medically

28   determinable physical or mental impairment" which has lasted or is expected to last for twelve or

United States District Court
Northern District of California

1    more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[4] The ALJ must consider all evidence in

2    the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-

3    step sequential evaluation process to determine whether the claimant is disabled (*see id*. §

4    416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that

5    the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

6         Here, the ALJ set forth the applicable law under the required five-step sequential

7    evaluation process. *AR* at 16-17. At Step One, the claimant bears the burden of showing he has not

8    been engaged in "substantial gainful activity" since the alleged date on which the claimant became

9    disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be

10   substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ in this case

11   found that Plaintiff had not engaged in substantial gainful activity since August 10, 2014, the

12   alleged onset date. *AR* at 17. At Step Two, the claimant bears the burden of showing that he has a

13   medically determinable severe impairment or combination of impairments. *See* 20 C.F.R. §

14   416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or

15   combination of slight abnormalities) that has no more than a minimal effect on the ability to do

16   basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No.

17   96–3(p) (1996)). At Step Two, the ALJ found that Plaintiff suffered from the following severe

18   impairments: major depressive disorder, anxiety, and a neurocognitive disorder with a processing

19   speed of 62. *AR* at 18.

20        At Step Three, the ALJ compares the claimant's impairments to the impairments listed in

21   appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the

22   burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant

23   is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful,

24   the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.

25   *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or

26

27   _____

28   [4] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II)
     are virtually identical though found in different sections of the CFR. For the sake of convenience, the court
     will generally cite to the SSI regulations herein unless it is necessary to note otherwise.

1   combination of impairments that met or medically equaled the severity of any of the listed

2   impairments. *AR* at 18-20. Next, the ALJ determined that Plaintiff retained the RFC to perform the

3   full range of work at all exertional levels with the following non-exertional limitations and

4   exceptions: Plaintiff is limited to performing simple and repetitive tasks; he is limited to only

5   occasional interaction with co-workers, the public, and supervisors; and, he is "capable of

6   performing work done by rote (sic) with few changes, not performed rapidly or with high

7   production quotas, and working with things and not people." *Id*. at 20-22.

8          At Step Four, the ALJ determined that Plaintiff is able to perform his past relevant work as

9   a cook's helper. *Id*. at 23. Thus, the ALJ concluded that Plaintiff had not been under a disability,

10  as defined in the Social Security Act, at any time prior between the alleged onset date, August 10,

11  2014, and the date of the ALJ's decision, July 2, 2019. *Id*.

## DISCUSSION

13         First, the court will note that the ALJ's decision failed to make even a mention of

14  Plaintiff's unspecified arthropathies in multiple locations, or of his arthritis, at all. *See id*. at 17-23.

15  Instead, the ALJ merely noted that "the record contains evidence of a severed Achilles tendon . . .

16  [h]owever . . . there is a lack of records pertaining to this particular diagnosis . . . [in that] there is

17  no indication in the medical evidence that this condition worsened, went unresolved, or even more

18  than minimally limits the claimant's ability to perform basic work activities . . . [t]hus, the

19  undersigned finds the claimant's severed Achilles tendon is not a severe impairment." *Id*. at 18.

20         This was error for a number of reasons. First, in light of the evidence summarized above,

21  the ALJ's description of the record is woefully incorrect. Second, the record reflects that

22  Plaintiff's arthropathies and arthritis are not limited to his right leg (the site of the once-severed

23  Achilles tendon). Third, Plaintiff's chronic pain (in both legs, in his back, and in his hips) has been

24  observed by numerous treatment providers, and has not abated with even years of anti-

25  inflammatory medications. Fourth, it is independently erroneous for the ALJ to rely on his own

26  indifference in developing the record to state that "there is no indication in the medical evidence

27  that this condition . . . more than minimally limits the claimant's ability to perform basic work

28  activities." *Id*. At the very least, if the ALJ had doubts about the effects of this chronic pain on

United States District Court
Northern District of California

1    Plaintiff's ability to perform basic work functions, the ALJ should have asked Plaintiff about it

2    during the hearing.

3          In light of the ALJ's errors, two general legal principles must be noted. First, regarding

4    Plaintiff's arthropathies and arthritis, the court will note the ALJ had a duty to develop the record

5    in such a manner as to allow for a full and fair disability determination. That duty was not

6    discharged as to these impairments – indeed, it appears that the ALJ overlooked these conditions

7    entirely. This "duty to fully and fairly develop the record" is meant to "assure that [a] claimant's

8    interests are considered." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014)

9    (citation omitted); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)

10    ("In making a determination of disability, the ALJ must develop the record and interpret the

11    medical evidence."). Further, an ALJ's duty to develop the record "further" is triggered – as is the

12    case here – when there is "ambiguous evidence or when the record is inadequate to allow for

13    proper evaluation of the evidence." *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (as

14    amended May 19, 2011) (citation omitted). It should also be noted that an ALJ has broad

15    discretion in determining whether to order further consultative examinations when it may be

16    necessary to resolve ambiguities or other inadequacies in the body of evidence. *See Reed v.*

17    *Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citation omitted); *see also* 20 C.F.R. §

18    404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in

19    the evidence, or when the evidence as a whole is insufficient to allow us to make a determination

20    or decision on your claim."); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)

21    ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper

22    evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" (citing

23    *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty to develop the record is

24    incumbent and applicable even when claimants are represented by counsel. *Brown v. Heckler*, 713

25    F.2d 441, 443 (9th Cir. 1983).

26          Accordingly, on remand, the ALJ is **ORDERED** to secure a suitable consultative

27    examination with a rheumatologist for the purpose of evaluating Plaintiff's arthropathies and

28    arthritis, such that the record development in this case would also include an opinion from that

United States District Court
Northern District of California

1    examining rheumatologist as to the attendant limitations caused by Plaintiff's conditions. The ALJ

2    is **FURTHER ORDERED** to conduct a second hearing where the ALJ and Plaintiff's counsel are

3    instructed to thoroughly develop the record through a searching and thorough development of

4    Plaintiff's testimony in this regard. Lastly, at that hearing, to the extent that the ALJ will hear

5    testimony from a medical expert, the ALJ is **ORDERED** to allow that expert to first hear

6    Plaintiff's testimony about the subject matter for which the expert witness is to testify, and then to

7    direct that expert to render his or her opinions in such a manner as to also address Plaintiff's

8    testimony.

9             To the extent that there is any doubt about this court's ability to raise the issues pertaining

10   to Plaintiff's arthritis and other arthropathies *sua sponte*, the undersigned will note that, not only is

11   the court not precluded from raising such an issue *sua sponte*, but the court has an independent

12   duty – indeed, an obligation – to determine whether the ALJ's findings (in every regard) are

13   supported by substantial evidence. This is so because an appeal from the denial of Social Security

14   benefits is rather unlike ordinary civil litigation because the underlying claims process before the

15   ALJ is not adversarial. *See Sims v. Apfel*, 530 U.S. 103, 110 (2000). While claimants must carry

16   the burden of demonstrating that they qualify for benefits, the law does not leave them entirely to

17   their own devices; consequently, lapses and omissions in pleading or procedure cannot be relied

18   upon to withhold benefits from a claimant who may otherwise be entitled to them. *See Tackett v.*

19   *Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999). Therefore, when such a case is before this court,

20   while a plaintiff must make his or her own arguments for remand, that does not relieve this court

21   of its independent duty to effect a fulsome and searching review of the facts and to render a

22   thorough and independent determination as to whether the ALJ's findings are supported by

23   substantial evidence. *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). In therefore cannot be

24   reasonably suggested that the failure by a Plaintiff or her counsel to raise an error is an acceptable

25   reason for a court to actively ignore it. *See Ariz. State Dep't of Pub. Welfare v. Dep't of Health,*

26   *Educ. & Welfare*, 449 F.2d 456, 472 (9th Cir. 1971); *Hess v. Sec'y of Health, Educ. & Welfare*,

27   497 F.2d 837, 840 (3d Cir. 1974); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). A

28   significant number of courts faced with this issue have arrived at a similar conclusion. *See e.g.,*

1   *Farley v. Colvin*, 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017) (collecting cases standing for the

2   proposition that while a remand request is normally made by a party, there is no reason why a

3   district court may not remand, *sua sponte*, for an error that was not raised); *see also Cortes v.*

4   *Berryhill*, No. 3:16-cv-01910 (JCH), 2018 U.S. Dist. LEXIS 45256, 2018 WL 1392903, at *2-6

5   (D. Conn. March 19, 2018) (court *sua sponte* raised issue of ALJ's failure to develop the record

6   and reversed and remanded because it "could not ignore" a gap in record of mental health

7   treatment); *Peterson v. Commissioner of Social Security Admin.*, No. 16-2912, 2018 U.S. Dist.

8   LEXIS 26355, 2018 WL 953345, at *1 n.1 (D. N.J. Feb. 20, 2018) (same); *Taylor-Tillotson v.*

9   *Colvin*, No. 13-80907-CIV-WM, 2014 U.S. Dist. LEXIS 177510, 2014 WL 7211888, at *13 (S.D.

10  Fl. Dec. 18, 2014) ("A reviewing court may *sua sponte* address issues in social security cases");

11  *Mangan v. Colvin*, No. 12 C 7203, 2014 U.S. Dist. LEXIS 120515, 2014 WL 4267496, at *1

12  (N.D. Ill. Aug. 28, 2014) (same); *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 452 n.24 (N.D.N.Y.

13  2005) (noting additional issues that warrant remand *sua sponte*).

14          Second, the court must remind the Commissioner (and by extension, the ALJ) that "[s]tep

15  two . . . is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may

16  find that a claimant lacks a medically severe impairment or combination of impairments only

17  when his [or her] conclusion is clearly established by medical evidence." *Webb v. Barnhart*, 433

18  F.3d 683, 687 (9th Cir. 2005) (internal citations omitted); *see also Smolen v. Chater*, 80 F.3d

19  1273, 1290 (9th Cir. 1996) ("the step-two inquiry is a *de minimis* screening device to dispose of

20  groundless claims"; at step two, an impairment "can be found not severe only if the evidence

21  establishes a slight abnormality that has no more than a minimal effect on an individual's ability to

22  work" (citation and internal quotation marks omitted)); *see also Vertigan v. Halter*, 260 F.3d

23  1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities . . .

24  does not in any way detract from her credibility as to her overall disability"). It should also be

25  noted that an error at Step Two may be considered harmless where, at subsequent steps in the

26  analysis, the ALJ's decision reflects that he or she has considered any limitations posed by the

27  impairment in question. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *but see Hoopai v.*

28  *Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("The step two and step five determinations require

United States District Court
Northern District of California

1    different levels of severity of limitations such that the satisfaction of the requirements at step two

2    does not automatically lead to the conclusion that the claimant has satisfied the requirements at

3    step five."). At bottom, however, it cannot be argued that the ALJ's Step Two errors in this case

4    were harmless because Plaintiff's chronic pain and arthropathies clearly result in functional

5    limitations that were not taken into account at Step Three or beyond. Furthermore, the ALJ's

6    failure to properly develop the record regarding these conditions compounds and worsens the Step

7    Two error, rendering it impossible for this court to effect the "substantial evidence" review to

8    which Plaintiff is statutorily entitled.

9         Additionally, because the court is remanding for further proceedings that would require a

10   great deal of further record development, the court declines to address Plaintiff's remaining issues

11   not only because they can be adequately addressed on remand, but also because the calculus

12   underlying those issues will quite likely change on remand given the holdings expressed herein.

13   *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ

14   for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also*

15   *Gutierrez v. Comm'r of Soc. Sec.*, No. 18-cv-02348-RMI, 2019 U.S. Dist. LEXIS 165711, at \*30-

16   31 (N.D. Cal. Sep. 25, 2019); *Abdul-Ali v. Berryhill*, No. 18-cv-03615-RMI, 2019 U.S. Dist.

17   LEXIS 138512, 2019 WL 3841995, at \*7 (N.D. Cal. Aug. 15, 2019); *Augustine ex rel. Ramirez v.*

18   *Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other

19   claims plaintiff raises, none of which would provide plaintiff with any further relief than granted,

20   and all of which can be addressed on remand.").

21        In any event, on remand, the Commissioner is **ORDERED** to consider the other issues

22   raised in Plaintiff's briefing and to modify any ensuing ALJ opinion such as to clearly reflect the

23   fact that the each of the issues raised in this case by Plaintiff has been considered and addressed.

24   *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638,

25   at \*4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist.

26   LEXIS 212380, at \*21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021

27   U.S. Dist. LEXIS 52225, at \*16-17 (N.D. Cal. Mar. 19, 2021).

28   //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

As described above, Plaintiff's summary judgment motion (dkt. 21) is **GRANTED**,

Defendant's summary judgment motion (dkt. 28) is **DENIED**, and the case is **REMANDED** for

further proceedings consistent with the orders and instructions provided herein.

**IT IS SO ORDERED.**

Dated: March 9, 2022

ROBERT M. ILLMAN
United States Magistrate Judge